**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| CHIP'S SOUTHINGTON, LLC | : | Case No. 20-21458 (JJT) |
| | : | |
|     Debtor | : | |
| | : | |
| CHIP'S SOUTHINGTON, LLC | : | Adv. Pro. No. 21- |
| | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN EXPRESS NATIONAL BANK, | : | |
| CELTIC BANK CORPORATION, | : | |
| THE BUSINESS BACKER, LLC, and | : | |
| U.S. SMALL BUSINESS ADMINISTRATION | : | |
|     Defendants | : | |
| | : | March 15, 2021 |

**ADVERSARY COMPLAINT**

Chip's Southington, LLC (the "Debtor" or "Chip's Southington"), d/b/a Chip's Family

Restaurant,[1] debtor and debtor-in-possession, hereby brings this adversary proceeding pursuant to

Fed. R. Bankr. P. 7001(2) and (9) to determine the validity, priority, and extent liens filed by the

defendants, American Express National Bank ("AmEx") and Celtic Bank Corporation ("Celtic",

together with AmEx, the "Defendants") against the Debtor and to "strip" the liens of Celtic, AmEx,

The Business Backer, LLC ("Business Backer"), and the U.S. Small Business Administration

("SBA") to the extent they are not supported by equity in the property pursuant to 11 U.S.C. §

506(a) and (d), and granting such other and further relief as is just and proper.

---

[1] Chip's Southington is owned by Kaiaffa, LLC, which is also the owner of Chip's Southbury, LLC and Chip's
Wethersfield, LLC.

## SUMMARY OF THE ACTION

1.      The Plaintiff seeks to determine the validity, priority, and extent of liens filed by defendants AmEx and Celtic against the Debtor, to the extent they exist, pursuant to Fed. R. Bankr. P. 7001(2) and (9).

2.      The Plaintiff seeks to determine the fair market value of its assets and "strip" liens that are not supported by equity in property pursuant to 11 U.S.C. § 506(a) and (d).[2]  All of the Debtor's assets are fully encumbered by the liens of its primary secured lender, M&T Bank, and by Business Backer.  Accordingly, all other lien creditors listed on Schedule D of the Debtor's bankruptcy schedules should have their liens vacated by operation of Bankruptcy Code § 506(d).

## JURISDICTION AND VENUE

3.      The Court has "arising under" jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and Bankruptcy Code § 506(a) and (d), as well as the standing order of reference in this District.  This adversary complaint sets forth a claim to determine the secured status and value of property of the estate and to avoid certain liens.

4.      Pursuant to 28 U.S.C. §§ 157(b)(2), this matter is a core proceeding.

5.      The statutory predicates for the relief sought herein are §§ 506 and 544(a) of the Bankruptcy Code.

6.      Pursuant to 28 U.S.C. § 1408 and 1409, venue is appropriate in this District, as the Plaintiff's principal place of business and the property that is the subject of this adversary complaint are located in Southington, Connecticut.

---

[2] Hereafter, references to Title 11 of the United States Code are referred as "Bankruptcy Code § ___"

7.      The Plaintiff consents to the entry of final orders or judgments by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PARTIES TO THE ACTION

8.      Chip's Southington LLC is a Connecticut limited liability company having its principal place of business at 99 Executive Blvd N, Southington, CT, 06489.

9.      American Express National Bank is a commercial bank with corporate headquarters located at 4315 South 2700 West, Salt Lake City, Utah 84184.

10.     Celtic Bank Corporation is a privately owned industrial bank with its principal place of business at 268 South State Street, Suite 300, Salt Lake City, Utah 84111.

11.     Business Backer is a Delaware limited liability with its principal place of business at 10856 Reed Hartman Highway, Suite 100, Cincinnati, Ohio 45242.

12.     The U.S. Small Business Administration is an autonomous agency of the United States Government with an office located at 409 3rd St, SW, Washington, DC 20416

## FACTS AND BACKGROUND

13.     On December 29, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code.  Pursuant to § 1184 of the Bankruptcy Code, the Debtor continues to operate its business and manage its properties, affairs, and assets as debtor-in-possession.  No examiner or committee has been appointed in this case. George Purtill has been appointed as the Subchapter V trustee in this case.

14.     The Debtor is one of five locations of "Chip's Family Restaurant," a local family-friendly breakfast and brunch restaurant, famous throughout Connecticut for its atmosphere, and, most significantly, its pancakes.

15.     The Debtor-restaurant is located at 99 Executive Blvd N, Southington, Connecticut (the "Property").

16.     Originally established in Orange in 1966, Chip's Family Restaurant expanded to locations in Fairfield, Wethersfield, Trumbull,[3] Southbury, and Southington.

## Corporate Structure

17.     The Debtor is a Connecticut limited liability company.  The management of the Debtor is vested in its sole member, Kaiaffa, LLC ("Kaiaffa"), a Connecticut limited liability company.  Kaiaffa's sole member is George Chatzopoulos.  Mr. Chatzopoulos is the primary executive manager of all locations.

18.     Kaiaffa is also the owner of the Southbury and Wethersfield locations.  The Orange (DGA, LLC) and Fairfield (525 Tunxis Hill Cut-Off, LLC) locations are owned by The Minos Trust.  Kaiaffa also serves as the administrative "hub" for all of the restaurants, handling tasks such as accounting, overall marketing of the brand, legal matters, workers' compensation insurance, etc.

19.     The Debtor is lessor of the Property pursuant to a ground lease agreement (the "Lease") entered into between the Debtor and Execwest Retail, LLC (the "Landlord"), a Delaware limited liability company, on August 11, 2016.

## The Debtor's Capital Structure

20.     M&T Bank provided a mortgage loan to the Debtor in the principal sum of $1,200,000.00, evidenced by a promissory note signed by the Debtor on or about October 25, 2016, and secured by an open-end construction leasehold mortgage, security agreement, and fixture filing. The M&T Bank loan provided funding for the construction of a Chip's Family Restaurant at the

---

[3] The Chip's Family Restaurant location in Trumbull closed in January 2020.  There are no plans to reopen a Chip's Family Restaurant location in Trumbull at this time.

Property.  As of the Petition Date, the amount due on the M&T Bank loan was approximately $1,038,134.51, consisting of $1,027,605.08 of principal and $10,529.43 of interest as of December 28, 2020, with a per diem accrual of $119.65.

21.     M&T Bank also filed a UCC-1 financing statement on November 4, 2016, in Volume 00604 at Page 1929 with the Connecticut Secretary of State (the "M&T UCC-1").  UCC Number 3147992. The M&T Bank debt is secured by all of the Debtor's assets.

22.     In addition to M&T Bank, the following parties-in-interest filed UCC-1 financing statements against the Debtor, as further described below, which are subordinate to M&T Bank's lien:

      a.   Celtic;

      a.   Business Backer;

      b.   AmEx; and

      c.   The SBA.

23.     Defendant Celtic claims an interest in the Debtor's personal property by virtue of a UCC-1 financing statement filed with the Connecticut Secretary of State on or about December 6, 2019 in Volume X-00140 at Page 0562 (the "Celtic UCC-1").    UCC Number 3343812.

24.     Defendant Business Backer claims an interest in the Debtor's personal property by virtue of a UCC-1 financing statement filed with the Connecticut Secretary of State on or about December 9, 2019 in Volume U-00692 at Page 01273 (the "Business Backer UCC-1").  UCC Number 3344556.

25.     Defendant SBA claims an interest in the Debtor's personal property by virtue of a UCC-1 financing statement filed with the Connecticut Secretary of State on or about June 27, 2020 in Volume X-00169 at Page 0652 (the "SBA UCC-1").  UCC Number 3382140.

**Value of the Debtor's Assets**

26.     As of the Petition Date, the value of the Debtor's assets was estimated at approximately $1,344,750.

27.     The Debtor's Lease with the Landlord is a ground lease.  Thus, while the Debtor is the owner of the building on the Property, it is not the owner of the land underlying the building.

28.     The building was estimated to be value at $500,000.[4]

29.     The Debtor's assets consisted of intercompany receivables totaling about $455,000. The Debtor estimates that presently, at best, approximately thirty-five (35%) of the intercompany receivables may be collectible, leaving perhaps $150,000 of collectible intercompany receivables.

30.     Therefore, the value of all of the property of the bankruptcy estate as of the Petition Date was up to approximately $1,045,000.

**Encumbrances against Property of the Estate**

31.     As of the Petition Date, the Debtor's assets were subject to the encumbrances set forth in paragraphs 21-25.  Of these, only the liens of M&T Bank and Business Backer attach to equity in the Debtor's assets.

32.     A copy of the UCC-1 Report is attached hereto as Exhibit A.

**COUNT ONE:**
**Determination of Validity, Extent, or Priority of a Lien (as to Celtic)**

33.     Paragraphs 1 through 32 are incorporated by reference into this Count as if fully recited herein.

34.     The Debtor entered into a financing and security agreement with Celtic on or about December 6, 2019 (the "Celtic Agreement").

---

[4] The Debtor has not appraised the building in the last year.

35.     Celtic provided a revolving line of credit pursuant to which the Debtor was able to obtain draws from Celtic.

36.     As security for repayment of Celtic's loan, the Debtor purported to grant Celtic a security interest in all of the Debtor's assets.

37.     Celtic claims an interest in the Debtor's personal property by virtue of the Celtic UCC-1.

38.     The Celtic UCC-1 was allegedly secured by all of the Debtor's assets.

39.     The Debtor paid all amounts due to Celtic on or by January 31, 2020.

40.     The Debtor has not drawn upon the line of credit under the Celtic Agreement since it paid off the loan.

41.     On January 12, 2021, the Debtor filed its Schedules of Assets and Liabilities (ECF 48), in which it scheduled the prepetition claim for Celtic in the amount of $0.00 and listed it as "disputed."

42.     Celtic Bank did not file a proof of claim by the claims bar date.

43.     Although the debt to it has been paid, Celtic has not released the Celtic UCC-1.

44.     While the Debtor does not believe Celtic has a security interest in any of the Debtor's assets because all obligations to Celtic have been paid in full, the Debtor seeks a determination by the Bankruptcy Court of the validity, priority, and extent of the prepetition security interest Celtic may have in the Debtor's assets.

### COUNT TWO:
### Determination of Validity, Extent, or Priority of a Lien (as to AmEx)

45.     Paragraphs 1 through 32 are incorporated by reference into this Count as if fully recited herein.

46.     The Debtor entered into a business loan and security agreement with AmEx on or about January 2, 2020 (the "AmEx Agreement").

47.     AmEx provided merchant financing to the Debtor in the principal amount of $250,000.

48.     As security for repayment of AmEx's loan, the Debtor purported to grant AmEx a security interest in all of the Debtor's assets.

49.     AmEx claims an interest in the Debtor's personal property by virtue of the AmEx UCC-1.

50.     The AmEx UCC-1 was allegedly secured by collateral described on the AmEx UCC-1 as "All assets of the Debtor, whether now owned or hereafter acquired or arising".

51.     On January 12, 2021, the Debtor filed its Schedules of Assets and Liabilities (ECF 48), in which it scheduled the prepetition claim for AmEx in the amount of $ $155,273.18 and listed it as "disputed."

52.     AmEx did not file a proof of claim by the claims bar date.

53.     The collateral description of "all assets" does not identify with any specificity what assets secure AmEx's alleged debt.  This description is insufficient to put creditors on notice of AmEx's secured status.

54.     Thus, the Debtor seeks a determination by the Bankruptcy Court of the validity, priority, and extent of the prepetition security interest AmEx may have in the Debtor's assets.

**COUNT THREE:**
**Valuation and Determination of Secured States – Bankruptcy Code § 506(a)**
**(As to All Defendants)**

55.     Paragraphs 1 to 54 are incorporated by reference into this Count as if fully recited herein.

56.     Pursuant to Bankruptcy Code § 506(a)(1):

An allowed claim of a creditor secured by a lien on property in which the estate has an interest… is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property… and is an unsecured claim to the extent that the value of such creditor's interest… is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

57.     The Debtor is entitled to a judicial determination of the value of its assets to ascertain whether some or all of the claims against said assets are secured or unsecured for purposes of seeking a judicial determination as to validity and extent of liens asserted by alleged secured creditors.

58.     Therefore, the Plaintiff seeks a determination that the values of its assets are as set forth above.

59.     M&T Bank holds a first position lien on all of the Debtor's assets in the amount of $1,038,134.51.

60.     The Debtor scheduled the claim amount for Celtic as $0.00 and as "disputed". Celtic did not file a proof of claim.

61.     The Debtor scheduled the prepetition claim for Business Backer as $124,478.69. This claim is not disputed. Business Backer did not file a proof of claim.

62.     The Debtor scheduled the prepetition claim for AmEx as $155,273.18 and as "disputed". AmEx did not file a proof of claim.

63.     The Debtor scheduled the prepetition claim for the SBA as $149,900.00. The SBA filed a proof of claim in the amount of $152,989.73. For purposes of this Complaint and the relief sought, the Debtor is not disputing the SBA's claim amount.

64.     Accordingly, the Court should enter an order determining that the claims of each Defendant, subordinate to M&T Bank, are treated as follows:

    b.   Celtic: Disallowed claim (no proof of claim filed).

    c.   Business Backer: Allowed secured claim to the extent of $6,865.49 and an allowed unsecured claim in the amount of $117,613.69.

    d.   AmEx: Disallowed unsecured claim (no proof of claim filed).

    e.   SBA: Allowed unsecured claim.

**COUNT FOUR:**
**Disallowance of Liens and Secured Status – Bankruptcy Code § 506(d)**
**(As to All Defendants)**

65.     Paragraphs 1 to 64 are incorporated by reference into this Count as if fully recited herein.

66.     Subject to exceptions not applicable here, pursuant to Bankruptcy Code § 506(d): "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void…."

67.     The secured claims of M&T Bank and Business Backer fully encumber all of the assets of the Debtor, such that all creditors subordinate to M&T Bank and Business Backer should not be treated as "secured claims".

68.     After subtracting the amount of prior encumbrances, the claims (be they allowed or disputed claims) of creditors subordinate to M&T Bank and Business Backer are unsecured to the extent of their balance.

69.     A lien on property of the estate is treated as a secured claim only to the extent that there is equity available in the collateral to support the claim. The claim is treated as an unsecured

claim to the extent that the outstanding liability exceeds the available equity in the collateral.  11 U.S.C. § 506(d).

70.     Moreover, to the extent that a lien on estate property is not supported by equity in the collateral, the lien is void, with exceptions not pertinent here. *Id.*

71.     Accordingly, the claims of all creditors subordinate to M&T Bank and Business Backer should be treated as unsecured claims and the liens attaching to property of the estate vacated.

72.     The claims of M&T Bank and Business Backer should be treated as secured claims as set forth above.

73.     Therefore, the Court should enter an order:

a.   Bifurcating the claim of Business Backer into an allowed secured claim to the extent of $6,865.49 and an allowed unsecured claim of $117,613.69; and

b.   Vacating and voiding the liens and encumbrances of all Defendants with a lower priority than Business Backer as set forth on <u>Exhibit A</u>.

**WHEREFORE,** Plaintiffs respectfully request that the Court:

1.      Enter a declaration and order setting the amount of Celtic's secured claim as $0.00 as set forth in Count One;

2.      Enter a declaration and order setting forth the validity of AmEx's security interest as set forth in Count Two;

3.      Enter a declaration and order setting forth the value of the assets of the Debtor as set forth in Count Three;

4.      Enter a declaration and order bifurcating and/or voiding the liens of Defendants as set forth in Count Four; and

5.      Afford the Debtor such other and further relief as the Court may deem to be just, proper, and equitable.

THE PLAINTIFF:
CHIP'S SOUTHINGTON, LLC

By:    */s/Jeffrey M. Sklarz*
        Jeffrey M. Sklarz (ct20938)
        Joanna M. Kornafel (ct29199)
        Green & Sklarz LLC
        One Audubon St., 3rd Floor
        New Haven, CT 06511
        (203) 285-8545
        Fax: (203) 823-4546
        jsklarz@gs-lawfirm.com
        jkornafel@gs-lawfirm.com